UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROY D. JONES,

    Plaintiff,

Case No. 2:08-cv-192

v.

Honorable Robert Holmes Bell

PATRICIA CARUSO et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Roy D. Jones, Jr., an inmate currently confined at the Michigan Reformatory, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include MDOC Director Patricia Caruso, Hearing Officer Susan Burke, Deputy Director Barry McLemore, Warden Timothy Luoma, Deputy Warden Darlene Edlund, Warden Greg McQuiggin, Deputy Warden Lynda Tribley, Regional Prison Administrator James McMeekin, Assistant Deputy Warden Bill Luetzow, Inspector Daniel Ezrow, Inspector Greg Burnett, Corrections Officer Alen Rauvala, and Hearing Investigator Julie Green. However, the only defendants served in this case are Defendants Caruso, Edlund, McQuiggin, Tribley, Rauvala and Green.

Plaintiff's complaint alleges that on August 6, 2005, a prisoner escaped from the Baraga Maximum Correctional Facility (AMF). Plaintiff was investigated for possible involvement in the escape. As a result of the investigation, Defendant Rauvala issued a major misconduct on Plaintiff and Defendant Green acted as the Hearing Investigator for the ticket. Defendant Green

responded to Plaintiff's requests for documents, video, and witness statements. On December 20, 2005, a Hearing Officer found Plaintiff guilty of the major misconduct. Plaintiff appealed the misconduct conviction and the Circuit Court ultimately vacated and set aside the conviction.[1] Plaintiff claims that Defendant Rauvala falsified evidence against him and that Defendant Green knowingly refused to investigate the ticket to Plaintiff's satisfaction. Plaintiff claims that Defendants' actions violated his rights under the Fourteenth Amendment to the United States Constitution. Plaintiff is seeking damages.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375,

---

[1]The Michigan Department of Attorney General is currently appealing this decision in the Michigan Court of Appeals.

382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that they are entitled to summary judgment on Plaintiff's claims because he received due process. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

In support of their motion for summary judgment, Defendants offer a copy of the misconduct hearing report, dated December 20, 2005. (Defendants' Exhibit 1.) The report indicates that the following evidence was presented at the hearing: the misconduct report, the hearing investigation report, Plaintiff's statement, AMF Food Service Tool Sign Out/In Sheets for 7-28 through 7-31 with prisoner's name and tools checked out highlighted, and sheets for Prisoners Fauth and Downhead for 8-4 and 8-2-05. This evidence was read to and discussed with prisoner. The Hearing Officer viewed the video, which showed Plaintiff giving an elbow (a kitchen tool) to the officer while other prisoners were continuing to work, and later giving the officer a pitcher. The Hearing Officer listed the following reasons for the guilty finding:

> The food service tool sign out/in sheets for 7-28 through 7-31 show that prisoner turned in the tools he used similar to those used on the date of the incident after 1200. (Prisoner asked for sheets for thirty days, but I find this sampling of sheets to be sufficient.) On the date of the misconduct, prisoner turned in to Officer Rauvala the same type of tools prior to 1100. Officer Rauvala says that this turning of the tools so early was unusual, so Officer Rauvala was suspicious that a fight may occur. That he did not do rounds does not attenuate his suspicion, as prisoner claims. Officer Rauvala also says that prisoner usually turns in his tools all at once, so when he turned in a few tools the second time, this further caused Officer Rauvala to be on the look out for a fight. Statements of staff who work in food services are consistent in saying that the tools, such as elbows, are checked in after 1200, with 1300-1330 being a more reasonable time frame. The two other prisoners, Fauth and Downhead, who checked out similar tools turned them in at the 1300 hour. I find it to be more than just a coincidence that Officer Rauvala was being distracted by the tool turn-in by prisoner when at 1112 a staff member opened the gate that allowed Prisoner Lawson to escape Baraga Maximum Facility. (This per a critical incident report, which is marked as confidential for security purposes.) Prisoner gave me a statement from Prisoner Lawson purported to have been written in the County of Baraga saying that prisoner had nothing to do with Lawson's escape. If Lawson indeed wrote the statement, he would have had to have written it prior to his escape, since Lawson has been in the County of Marquette since he was apprehended after his escape. It would

> follow that prisoner was part of the plan to escape as he received the statement from Lawson prior to his escape. I find that prisoner assisted Prisoner Lawson in his escape from a secure facility, Baraga Maximum facility by distracting a member of the kitchen custody staff while other staff members also assisted in Prisoner Lawson's escape.

(Defendants' Exhibit 1, p. 3.)

Plaintiff requested a rehearing, which was denied by Richard Stapleton, MDOC Hearings Administrator. In the denial, Stapleton stated that the Hearing Officer's judgment must be upheld on appeal so long as it is supported by substantial evidence on the whole record. Stapleton noted that the record reflected that Plaintiff was given the opportunity to present evidence on his behalf. In addition, Stapleton stated that the Hearing Officer found, based on the evidence presented at the hearing, that Plaintiff had assisted another inmate in escaping from the facility. (Defendants' Exhibit 1, p. 5.)

In response to the motion for summary judgment, Plaintiff states that Defendant Green was negligent, which deprived Plaintiff of witnesses, documents, and other evidence which Plaintiff believed were necessary to defend himself. However, a review of the record reveals that Plaintiff did receive a hearing where he was able to present his version of the events. The fact that Plaintiff was unsuccessful in convincing the Hearing Officer of his innocence does not necessitate a finding that he was denied due process. In the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's due process claims.

Defendants also state that Defendants Caruso, Edlund, McQuiggin and Tribley were not personally involved in the alleged denial of due process. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus,

Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory

official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso, Edlund, McQuiggin and Tribley was personally involved in the activity which forms the basis of his claim. The only roles that Defendants Caruso, Edlund, McQuiggin and Tribley had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, Edlund, McQuiggin and Tribley cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Caruso, Edlund, McQuiggin and Tribley are entitled to summary judgment for lack of personal involvement.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #41) be granted and this case be dismissed in its entirety. In addition, should the court adopt the report and recommendation in this case, Plaintiff's motion to deny the motion for summary judgment (Docket #49) is properly denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 19, 2009